UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

WESLEY JONES.

                              Plaintiff,

          v.

EQUIFAX INFORMATION SERVICES LLC dba EQUIFAX; EXPERIAN INFORMATION SOLUTIONS, INC. dba EXPERIAN; and TRANS UNION (OF DELAWARE), LLC aka TRANS UNION LLC dba TRANSUNION,

                              Defendants.

CIVIL ACTION NO.: 25 Civ. 1535 (GHW) (SLC)

**OPINION & ORDER**[1]

**SARAH L. CAVE,** United States Magistrate Judge.

## I. INTRODUCTION

Plaintiff Wesley Jones ("Mr. Jones"), a federal Cyber Security Engineer with a top-secret security clearance, disputed two tradelines that Defendants, three credit reporting agencies ("CRAs"),[2] reported in his consumer credit reports. (ECF No. 1-1 ¶¶ 3, 28, 264–417 (the "Complaint")). After Defendants failed to correct the tradelines, Mr. Jones filed this action asserting claims under the Fair Credit Reporting Act, 15 U.S.C. § 1681, et seq. ("FCRA") and its New York analog, N.Y. Gen. Bus. L. § 380 et seq. ("NYFCRA"). (Id. ¶¶ 422-76). Experian now moves to transfer this action to the Northern District of Georgia, where Mr. Jones resides. (ECF Nos. 28–29-4 (the "Motion")). For the reasons set forth below, the Motion is GRANTED.

---

[1] "Because a motion to transfer venue is non-dispositive, this Court will adjudicate it by order pursuant to 28 U.S.C. § 636(b)(1)(A), rather than by issuing a report and recommendation." Mulgrew v. U.S. Dep't of Transp., 717 F. Supp. 3d 281, 284 n.1 (E.D.N.Y. 2024) (collecting cases); accord, Guardian Life Ins. Co. of Am. v. Coe, 724 F. Supp. 3d 206, 210 n.1 (S.D.N.Y. 2024).

[2] Defendants are: Equifax Information Services LLC dba Equifax ("Equifax"); Experian Information Solutions, Inc. dba Experian ("Experian"); and Trans Union (of Delaware), LLC aka Trans Union LLC dba TransUnion ("TransUnion"). (ECF No. 1-1 ¶¶ 34–40, 155–63, 216–24). Mr. Jones has settled his claims against TransUnion and Equifax. (ECF Nos. 15; 16; 21; 22).

1

## II. BACKGROUND

We incorporate the factual and procedural background in this action as set forth in the Opinion & Order dated March 26, 2025, in which the Court denied Mr. Jones' motion to strike portions of Experian's Answer, and continue the use of all defined terms therein. See Jones v. Equifax Info. Serv. LLC, No. 25 Civ. 1535 (GHW) (SLC), 2025 WL 918466, at *1–3 (S.D.N.Y. Mar. 26, 2025) ("Jones I"). We set forth only those additional facts necessary to decide the Motion.

In the Complaint, Mr. Jones does not allege the state in which he is domiciled, but he references both the Monro-DC/CNBA Dispute Letter and the SC Federal Credit Dispute Letter (ECF No. 1-1 ¶¶ 328–30, 352–54 (together, the "Dispute Letters")), copies of which Experian has submitted in support of the Motion. (ECF Nos. 29-1; 29-2). In both Dispute Letters, Mr. Jones provides his return address in Douglasville, Georgia, and he sent both to Experian's address in Costa Mesa, California. (ECF Nos. 29-1 at 2, 10; 29-2 at 2, 8). Mr. Jones included with the Monro-DC/CNBA Dispute Letter a copy of his driver's license, which was issued by the State of Georgia and shows an address in Riverdale, Georgia. (ECF No. 29-1 at 4). Mr. Jones included with the SC Federal Credit Dispute Letter a copy of his United States Passport, which indicates his place of birth as Georgia. (ECF No. 29-2 at 5).

In the Complaint, Mr. Jones does allege that Experian is "headquartered in Costa Mesa, California and/or Dublin, Ireland." (ECF No. 1-1 ¶ 156). He alleges "[u]pon information and belief" that Experian has an active registration with the New York Department of State Division of Corporations, to which it has provided an address for service of process in Costa Mesa, California. (Id. ¶¶ 197–205, 210-11). He also alleges "[u]pon information and belief that Experian's principal executive office is in Costa Mesa, California, that Experian has a registered

agent at 28 Liberty Street, New York, New York, and that "Experian is a foreign corporation authorized to conduct business in New York." (Id. ¶¶ 212–14).

The parties have exchanged initial disclosures pursuant to Federal Rule of Civil Procedure 26(a)(1). (ECF Nos. 29-3 ("Mr. Jones' Disclosure"); 29-4 ("Experian's Disclosure")). The individuals or entities whom Mr. Jones contends are likely to have discoverable information include: himself; Experian employees and counsel; SC Federal Credit Union, in North Charleston, South Carolina; Monro, Inc., in Rochester, New York; the Consumer Data Industry Association, in Washington, DC; and the Fair Isaac Corporation, in Bozeman, Montana. (ECF No. 29-3 at 2–6). Mr. Jones identifies thirteen categories of documents in his possession that he may use to support his claims. (Id. at 6–7). Mr. Jones is seeking four categories of damages: (i) actual damages for "harm to credit reputation, emotional distress, and interference with his security clearance obligations"; (ii) statutory damages pursuant to 15 U.S.C. §§ 1681n and 1681o; (iii) punitive damages; and (iv) attorneys' fees and costs. (Id. at 8). The individuals or entities whom Experian contends are likely to have discoverable information supporting its defenses include: Mr. Jones; Experian employees; South Carolina Federal Credit Union; and Citibank, N.A., in Sioux Falls, South Dakota. (ECF No. 29-4 at 2–4). Experian identifies as documents it may use to support its defenses its consumer disclosures for Mr. Jones, correspondence with Mr. Jones, and records regarding its reinvestigation of items on Mr. Jones' consumer report. (Id. at 4).

On April 21, 2025, following an initial case management conference with the parties, the Court entered a case management plan setting the pretrial schedule and briefing schedule for the Motion. (ECF No. 27 (the "CMP")). On April 28, 2025, Experian filed the Motion, which asks the Court to transfer the action to the Northern District of Georgia, where Mr. Jones resides. (ECF

3

Nos. 28–29-4). Later the same day, Mr. Jones filed an opposition to the Motion. (ECF Nos. 31–32). On May 12, 2025, Experian filed a reply. (ECF No. 33).

### III. DISCUSSION

**A. Legal Standard**

The relevant change of venue statute, 28 U.S.C. § 1404(a), provides:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented.

28 U.S.C. § 1404(a); see Guardian, 724 F. Supp. 3d at 212; accord Glotser v. Boardwalk Regency LLC, No. 20 Civ. 2654 (JPC) (SLC), 2023 WL 2162063, at *3 (S.D.N.Y. Feb. 22, 2023).[3] "Courts apply a two-part test to determine whether to grant a motion to transfer venue." W.P.V. v. United States, No. 21 Civ. 4436 (JPC), 2023 WL 1991426, at *3 (S.D.N.Y. Feb. 14, 2023). First, the Court must decide whether "the transferee district" is "one where jurisdiction over the defendant could have been obtained at the time suit was brought, regardless of defendant's consent." Sentegra, LLC v. ASUS Computer Int'l, No. 15 Civ. 3768 (GHW), 2016 WL 3093988, at *2 (S.D.N.Y. June 1, 2016). If the first requirement is met, the Court then turns to the second inquiry, "whether transfer is appropriate." Glotser, 2023 WL 21620163, at *3. This inquiry considers whether transfer is "in the interest of justice and the convenience of the parties and witnesses," and is guided by nine "private" and "public-interest" factors:

> (1) the convenience of the witnesses; (2) the convenience of the parties; (3) the location of relevant documents and the relative ease of access to sources of proof; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) the

---

[3] Internal citations and quotation marks are omitted from case citations unless otherwise indicated.

4

> forum's familiarity with the governing law; (8) the weight accorded the plaintiff's choice of forum; and (9) trial efficiency and the interests of justice.

Sentegra, 2016 WL 3093988, at *2; accord Pence v. GEE Grp., Inc., 236 F. Supp. 3d 843, 850 (S.D.N.Y. 2017). "The moving party must demonstrate that these factors militate toward transfer by clear and convincing evidence." Glotser, 2023 WL 21620163, at *3 (citing N.Y. Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc., 599 F.3d 102, 113-14 (2d Cir. 2010)). "There is no rigid formula for balancing these factors and no single one of them is determinative. Instead, weighing the balance is essentially an equitable task left to the Court's discretion." Citigroup Inc. v. City Holding Co., 97 F. Supp. 2d 549, 561 (S.D.N.Y. 2000) (cleaned up).

**B. Application**

    **1. This Action Could Have Been Filed in the Northern District of Georgia.**

Experian argues that Mr. Jones could have filed this action in the Northern District of Georgia in the first instance because he resides within that district and his claims arise out of communications with Experian he sent from and received in that district. (ECF No. 30 at 10–11 (citing 28 U.S.C. § 1391(b)(2) (providing that venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred")).

Mr. Jones does not contest that he could have filed this action in the Northern District of Georgia, but argues that Experian waived its right to contest venue by removing the action, which Mr. Jones originally filed in New York State Court, to this District. (ECF No. 31 at 2-3). In support of his argument, Mr. Jones first cites Caterpillar Inc. v. Lewis, 519 U.S. 61, 73 (1996), as containing the following quote, "'[R]emoval constitutes defendant's acceptance of federal jurisdiction and venue.'" (ECF No. 31 at 2). The problem for Mr. Jones, however, is that Caterpillar contains no such quotation, and indeed, did not address venue under § 1404(a), let alone hold that a

5

defendant's removal waives the right challenge to venue. See Caterpillar, 519 U.S. at 64 (explaining that "[t]he question presented is whether the absence of complete diversity at the time of removal is fatal to federal-court adjudication").

In further support of his argument that Experian waived the right to challenge venue, Mr. Jones cites PT United Can Co. Ltd. v. Crown Cork & Seal Co, 138 F.3d 65, 72 (2d Cir. 1998) as holding that "'[p]arties who remove actions to federal court under 28 U.S.C. § 1441(a) necessarily waive any venue objections by doing so.'" (ECF No. 31 at 2). Again, however, PT United Can Co. contains no such quotation. Even worse for Mr. Jones' position, PT United Can Co. holds the opposite of what he represents that it does—the Second Circuit rejected the argument "that removal waives challenges based on venue defects[,]" and held that "[a] party who removes an action from state to federal court does not, in so doing, waive the defense of improper venue as to the underlying state court action." 138 F.3d at 72 (emphasis added). The Second Circuit's holding was not new—the court relied on two decisions from the 1940's for the proposition that a defendant does not waive venue challenges by removing an action to federal court. Id.; see Moss v. Atlantic Coast Line R.R. Co., 157 F.2d 1005, 1006 (2d Cir. 1946) (explaining that "defendant is not precluded from having the suit dismissed because its motion to remove was in any sense the waiver of a right, for it has waived nothing by taking that action."); Greenberg v. Giannini, 140 F.2d 550, 553 (2d Cir. 1944) (L. Hand, J.) ("When a defendant removes an action from a state court in which he has been sued, he consents to nothing and 'waives' nothing[.]"). In short, not only is there no basis for Mr. Jones' argument that Experian waived venue by removing the action to this Court, Second Circuit precedent is directly to the contrary. See also Bluefire Wireless, Inc. v. Cloud9 Mobile Commc'ns, Ltd., No. 09 Civ. 7268 (HB), 2009 WL 4907060,

at *4 (S.D.N.Y. Dec. 21, 2009) (explaining that "the law is clear that" defendants who removed an action from state court "can nonetheless argue that venue is improper in the state court from which the case was removed[,]" citing PT United Can Co.).

Furthermore, Mr. Jones' claims are based on a federal statute—FCRA—so the Northern District of Georgia has federal subject matter jurisdiction over the action under 28 U.S.C. § 1331. Experian does not contest that it is subject to personal jurisdiction in that District and agrees that venue would have been proper there. (ECF No. 30 at 10–11). Accordingly, because this action could have been filed initially in the Northern District of Georgia, the first step in the inquiry is met.

## 2. The Private and Public Interest Factors Weigh in Favor of Transfer.

### a. Convenience of witnesses and parties[4]

"[T]he single most important factor in the analysis of whether a transfer should be granted" is the convenience of party and non-party witnesses. Aerotel, Ltd. v. Sprint Corp., 100 F. Supp. 2d 189, 197 (S.D.N.Y. 2000). "[T]he "core inquiry" under § 1404(a) is where the 'center of gravity of the litigation' is located," so "courts 'routinely transfer cases when the principal events occurred, and the principal witnesses are located, in another district.'" Ruiz ex rel. E.R. v. United States, No. 13 Civ. 1241 (KAM) (SMG), 2014 WL 4662241, at *11 (E.D.N.Y. Sept. 18, 2014) (quoting Viacom Int'l v. Melvin Simon Prods., Inc., 774 F. Supp. 858, 868 (S.D.N.Y. 1991)). "When weighing the convenience of the witnesses, courts must consider the materiality, nature, and quality of each witness, not merely the number of witnesses in each district." Freeplay Music, LLC v. Gibson Brands, Inc., 195 F. Supp. 3d 613, 617 (S.D.N.Y. 2016). "The convenience of non-

---

[4] This section combines the analysis of the first and second factors.

7

party witnesses is accorded more weight than that of party witnesses." Indian Harbor Ins. Co. v. Factory Mut. Ins. Co., 419 F. Supp. 2d 395, 402 (S.D.N.Y. 2005).

Here, the primary witnesses at trial are likely to be Mr. Jones, who resides in Georgia, and Experian employees, who are based in California. (ECF Nos. 29-3 at 2–6; 29-4 at 6–7). It is therefore more convenient for Mr. Jones, and for Experian, "no less convenient," to appear in the Northern District of Georgia. (ECF No. 30 at 13). While the convenience of the party witnesses is not entitled to "much weight," Glotser, 2023 WL 2162063, at *4, none of the non-party witnesses are based in this District either. (ECF Nos. 29-3 at 2–6; 29-4 at 6–7). For four of them—SC Federal Credit Union, the Consumer Data Industry Association, the Fair Isaac Corporation, and Citibank, appearing in the Northern District of Georgia requires as much travel—at least one airplane ride—as travel to this District. In addition, Experian asserts that, because Mr. Jones seeks emotional distress damages, it may seek testimony from individuals with knowledge of his emotional state, such as medical providers, family, or friends, who would likely reside in or near Douglasville, Georgia, in the Northern District of Georgia. (ECF No. 30 at 13).

Because it would be more convenient for Mr. Jones and the witnesses with knowledge relevant to his emotional distress damages to appear in the Northern District of Georgia, this factor weighs in favor of transfer.

**b. Location of relevant documents**

"[C]ourts have recognized that the location of relevant documents is largely a neutral factor in today's world of faxing, scanning, and emailing documents . . . ." Monfried v. Sigma Fin. Corp., No. 15 Civ. 2806 (VSB), 2016 WL 9724977, at *4 (S.D.N.Y. June 14, 2016); accord Barry v.

8

United States, No. 21 Civ. 7684 (BCM), 2022 WL 4467504, at *6 (S.D.N.Y. Sept. 26, 2022). Thus, "unless the defendant makes a detailed showing as to the burden it would incur absent a transfer," the "assertion that documents are located in the transferee forum is entitled to little weight." Intria Corp. v. Intira Corp., No. 00 Civ. 7198 (AGS), 2000 WL 1745043, at *4 (S.D.N.Y. Nov. 27, 2000).

Experian notes that Mr. Jones sent the Letters from the Northern District of Georgia, and that any documents regarding Mr. Jones' claims and damages—"documentation regarding the CBNA and SCFCU Accounts, medical records, or credit denials"—would be in his possession in the Northern District of Georgia. (ECF No. 30 at 14; see ECF Nos. 29-1; 29-2). Mr. Jones responds that "consumer credit reporting injuries, by their nature, are national and impact financial centers such as New York" and that his injuries "occurred within the reach of New York's financial infrastructure." (ECF No. 31 at 4). Whatever Mr. Jones might mean by these attenuated assertions, the bottom line is that he does not point to any evidence relevant to his claims in this District and does not dispute that he has relevant documents in his possession in Georgia. Accordingly, this factor also weighs in favor of transfer.

### c. Locus of operative facts

"The location of the operative events is a primary factor in determining a § 1404(a) motion to transfer." Alpha Indus., Inc. v. Alpha Clothing Co., No. 21 Civ. 87 (KPF), 2021 WL 2688722, at *6 (S.D.N.Y. June 30, 2021). That is because "transfer to a district where the key operative events occurred serves the interests of justice." Everlast World's Boxing Headquarters Corp. v. Ringside, Inc., 928 F. Supp. 2d 735, 745 (S.D.N.Y. 2013). "To determine where the locus of operative facts lies, courts look to the site of events from which the claim arises." Guccione v.

Harrah's Mktg. Serv. Corp., No. 06 Civ. 4361 (PKL), 2009 WL 2337995, at *8 (S.D.N.Y. July 29, 2009).

Here, the facts giving rise to Mr. Jones' claims occurred in Georgia and California. Mr. Jones sent the Letters from his address in Georgia, (ECF Nos. 1-1 ¶¶ 328–30, 352–54; 29-1 at 2, 10; 29-2 at 2, 8), and any damages, such as emotional distress or reputational harm, impacted him in Georgia. (ECF No. 29-3 at 8). Mr. Jones sent the Letters to Experian's Costa Mesa, California address. (ECF Nos. 29-1 at 10; 29-2 at 8). Apart from Mr. Jones' speculative assertions of an attenuated connection to New York as a "financial center," which we have discounted above, the record contains no evidence that any "principal event" underlying Mr. Jones' claims occurred in this District. Guccione, 2009 WL 2337995, at *8. This factor therefore strongly weighs in favor of transfer.

### d. Availability of process to compel witnesses

This factor requires the Court to consider its "power to compel attendance of unwilling witnesses, as a district court can only subpoena witnesses within the district or within 100 miles of the [court]." Fuji Photo Film Co. v. Lexar Media, Inc., 415 F. Supp. 2d 370, 375 (S.D.N.Y. 2006); see Fed. R. Civ. P. 45(c)(1). This factor is "generally relevant only with respect to third-party witnesses, because employee witnesses are subject to compulsory process in either forum by virtue of their employment relationship with a party." Ruiz, 2014 WL 4662241, at *11.

"[N]either party has submitted affidavits or other evidence suggesting that any prospective non-party witnesses would decline to appear in either district." Glotser, 2023 WL 2162063, at *9; W.P.V., 2023 WL 1991426, at *6 (collecting cases where, in the absence of evidence that non-party witnesses would not appear, this factor was neutral). As noted above,

10

this District is at least as far for four of the non-party witnesses the parties may call. (See § B.2.a., supra). In addition, some of the witnesses Experian may seek to call regarding Mr. Jones' damages reside outside this Court's subpoena power. (Id.) Therefore, this factor is neutral as to, if not slightly in favor of, transfer.

### e. Relative means of the parties

"Where a disparity exists between the means of the parties, a court may consider the means of the parties in determining venue." Aerotel, Ltd., 100 F. Supp. 2d at 197. "[A] party arguing against or for transfer because of inadequate means must offer documentation to show that transfer (or lack thereof) would be unduly burdensome to his finances." Federman Assocs. v. Paradigm Med. Indus., Inc., No. 96 Civ. 8545 (BSJ), 1997 WL 811539, at *4-5 (S.D.N.Y. Apr. 8, 1997) (granting motion to transfer, noting that plaintiff "ha[d] not sufficiently demonstrated—beyond mere speculation—that transfer . . . would be unduly burdensome"). Generally, "the relative means of an individual plaintiff in contrast to a large company clearly favors plaintiff" in the analysis of the transfer factors. Scherillo v. Dun & Bradstreet, Inc., 684 F. Supp. 2d 313, 329 (E.D.N.Y. 2010) (granting motion to transfer, noting that plaintiff failed to produce documentation showing that litigating in transferee district "would be prohibitively expensive").

The circumstances of this action weigh against such a presumption. The Northern District of Georgia is Mr. Jones' home forum, so litigating there will mean that he will expend less time and fewer resources traveling for court proceedings. In addition, and perhaps not surprisingly, Mr. Jones has offered no documentation to show that transfer would unduly burden his finances. See It's a 10, Inc. v. PH Beauty Labs, Inc., 718 F. Supp. 2d 332, 338 (S.D.N.Y. 2010). This factor therefore is neutral as to, if not slightly in favor, of transfer.

### f. <u>Familiarity with governing law</u>

The parties do not directly address this factor. (ECF Nos. 30; 31; 33). Mr. Jones asserts two claims, one under FCRA, and one under New York's analog, NYFCRA. (ECF No. 1-1 ¶¶ 422–76). By our research, judges in the Northern District of Georgia have issued over 100 decisions in FCRA actions just since January 2024—in more than two dozen of which Experian was named as a defendant—giving rise to a strong inference that the transferee court would be quite familiar with the application of FCRA. <u>See</u>, <u>e.g.</u>, <u>Walker v. Experian Info. Sols., Inc.</u>, No. 23 Civ. 5027 (LMM), 2025 WL 911385 (N.D. Ga. Mar. 19, 2025) (granting motion to dismiss FCRA claims); <u>Taylor v. Experian Info. Sols., Inc.</u>, No. 24 Civ. 2156 (AT) (LTW), 2024 WL 5265371 (N.D. Ga. Dec. 31, 2024) (recommending grant of Experian's motion to compel arbitration), <u>adopted by</u>, 2025 WL 431630 (N.D. Ga. Jan. 22, 2025).

In addition, while the NYFCRA is, of course, a New York, not a Georgia, statute, its language "is substantially similar" to the FCRA, and is "construed in the same way" as the FCRA, such that the judges of the Northern District of Georgia would be equally familiar with the analysis applicable to Mr. Jones' NYFCRA claim. <u>Mader v. Experian Info. Sols., Inc.</u>, 56 F.4th 264, 267 n.1 (2d Cir. 2023); <u>see</u> <u>Ahmad v. Experian Info. Sols., Inc.</u>, No. 23 Civ. 2222 (LJL), 2023 WL 8650192, at *4 n.4 (S.D.N.Y. Dec. 14, 2023) (explaining that analysis of FCRA claims applied equally to NYFCRA claims); <u>see also</u> <u>Federman Assocs.</u>, 1997 WL 811539, at *4 (noting that "the possibility that the law of another jurisdiction governs is a factor accorded little weight on a motion to transfer, especially where no complex questions of foreign law are involved").

Finally, we note that Georgia has also adopted its own FCRA analog, <u>see</u> Ga. Code Ann. § 10-1-393.14 ("Requirements for consumer reporting agencies"), and Mr. Jones still has the

12

option to amend his Complaint to assert a claim under his home state's statute. (ECF No. 27 § E (setting deadlines for amending pleadings under Fed. R. Civ. P. 15(a) as May 23, 2025, and amendments thereafter on a showing of good cause under Fed. R. Civ. P. 16(b)(4)).

Accordingly, because this Court and the Northern District of Georgia are familiar with the law governing Mr. Jones' claims, this factor is neutral as to transfer.

### g.  Weight accorded to Mr. Jones' choice of forum

A plaintiff's "choice of forum is generally entitled to deference." Am. Eagle Outfitters, Inc. v. Tala Bros. Corp., 457 F. Supp. 2d 474, 479 (S.D.N.Y. 2006). "Where, however, the plaintiff is an alien or a stranger to the forum with no connection to it, the degree of deference accorded [his] choice is diminished." Cento v. Pearl Arts & Craft Supply Inc., No. 03 Civ. 2424 (LAK), 2003 WL 1960595, at *1 (S.D.N.Y. Apr. 24, 2003) (collecting cases). Deference to a plaintiff's choice of forum is also "significantly diminished where, as here, the operative facts have no connection to the chosen district." Larca v. United States, No. 11 Civ. 3952 (JMF), 2012 WL 6720910, at *3 (S.D.N.Y. Dec. 16, 2012). We must "locate the degree of deference to be afforded [Mr. Jones'] forum choice on a sliding scale." Maverick Fund, L.D.C. v. Lender Processing Servs., Inc., No. 13 Civ. 5474 (DLC), 2013 WL 6467889, at *2 (S.D.N.Y. Dec. 10, 2013).

As Experian correctly notes, the Complaint lacks any allegations establishing a connection between the facts underlying Mr. Jones' claims and this District. (ECF No. 30 at 11-12). The case on which Mr. Jones relies to support his request for deference to his choice of this forum involved a forum non conveniens analysis, not a transfer analysis under § 1404(a), and is therefore unpersuasive. See Jones v. United States, No. 02 Civ. 1017 (JG), 2002 WL 2003191, at *3 (E.D.N.Y. Aug. 26, 2002) (noting that "many courts accord this factor [plaintiff's choice of forum] less

13

weight in the transfer context than in a forum non conveniens motion, since a transfer motion does not seek dismissal of the complaint[]"). Here, the factors weighing in favor of transfer to the Northern District of Georgia are quite compelling: Mr. Jones' communications with Experian were sent to or from Georgia, which is also where he sustained any injury, maintains possession of relevant documents, and some likely witnesses reside. In contrast, no events giving rise to any claims or defenses occurred in this District, nor can any evidence or witnesses be found here. Under these circumstances, Mr. Jones' choice of forum "is entitled to diminished weight." Glotser, 2023 WL 2162063, at *7; see Cento, 2003 WL 1960595, at *2 (finding that plaintiffs' "choice of this venue [was] entitled to diminished consideration" where they had "no connection to this forum" and failed to explain why they sued there).

### h. Trial efficiency and the interests of justice

In considering trial efficiency and the interests of justice, we note that this case is in its early stages, with the CMP having been entered approximately a month ago, fact discovery continuing for several months, until October 31, 2025, and no upcoming conference. (ECF No. 27). While this Court has engaged in a preliminary analysis of Mr. Jones' claims and Experian's defenses, that was in the context of the unmeritorious motion to strike, "which he should have known had very little chance of success." Jones I, 2025 WL 918466, at *8. Given the familiarity the judges of the Northern District of Georgia have with FCRA actions (see § B.2.f., supra), the transferee judge should not need to expend substantial resources getting up to speed on this case, especially given that there are two written opinions from this Court. Finally, "the Court cannot ignore the fact that the choice of this [D]istrict was completely arbitrary," and that

"[t]here simply is no reason for the case to be here, a factor relevant to the interest of justice." Cento, 2003 WL 1960595, at *2.

In conclusion, Experian has met its burden of showing by clear and convincing evidence that most of the nine factors favor transfer, with the remainder being neutral, with two of the most important factors—the locus of the operative facts and the convenience of the party and non-party witnesses—substantially weighing in favor of transfer and Mr. Jones' choice of forum being entitled to diminished deference. Accordingly, we find that transfer to the Northern District of Georgia is appropriate in this action.

\* \* \*

As with his motion to strike, there are several curiosities about Mr. Jones' opposition to the Motion, including its misrepresentation of the holdings and misquotation of cases. In addition, Mr. Jones has not provided any persuasive explanation for filing an action in this District, where neither he nor Experian are based, no acts giving rise to his claims occurred, and no individuals with knowledge of relevant information about the claims and defenses are present. See Id. (granting motion to transfer where plaintiffs gave "no reason whatsoever for their choice of this district"). We again must note that Federal Rule of Civil Procedure 11(b)(2), 28 U.S.C. § 1927, and the Court's inherent power provide authority to impose sanctions for materially false or misleading statements in court documents. See generally United States v. Cohen, 724 F. Supp. 3d 251, 257–58 (S.D.N.Y. 2024). While the record does not contain "clear and convincing evidence" that Mr. Jones and his counsel "knowingly submitted a material[ ] false or misleading pleading" with the requisite bad faith, Usherson v. Bandshell Artist Mgmt., No. 19 Civ. 6368 (JMF), 2020 WL 3483661, at *9 (S.D.N.Y. June 26, 2020), the errors in Mr. Jones' opposition, even if

15

arising from mere haste and sloppiness, have again increased the effort required of the Court to analyze Mr. Jones' arguments. Mr. Jones' counsel should thus consider this a <u>second</u> reminder of their obligations under Federal Rules of Civil Procedure 1 and 11(b) not to engage in tactics that contravene the need "to secure the just, speedy, and inexpensive determination" of this action in whichever district it proceeds. Fed. R. Civ. P. 1. We urge Mr. Jones not to take his chances on a third strike before the transferee judge in the Northern District of Georgia.

### IV. <u>CONCLUSION</u>

For the reasons set forth above, the Motion is GRANTED. The Clerk of the Court is respectfully directed to close ECF No. 28 and to transfer this action to the Northen District of Georgia.

Dated: New York, New York
May 22, 2025

SO ORDERED.

_____
SARAH L. CAVE
United States Magistrate Judge